We'll call Thomas E.Pierre v. Retrieval-Masters Creditors Bureau, Inc. Counsel, good morning. Good morning, Your Honors. I'm Michael Quirk of Berezovsky Law Group for Plaintiff Appellant Thomas E.Pierre. With the Court's permission, we'd like to reserve three minutes of our time for rebuttal. Three minutes, so it shall be done. Go ahead. This appeal presents the question of whether the Fair Debt Collection Practices Act applies to collection of monies, to defendant's collection of monies allegedly owed to an electronic highway toll payment service whose relationship with the alleged debtor is created and governed by a written account agreement. For the following reasons, the Act applies. Plaintiff's claim arises under 15 U.S.C. section 1692F, which prohibits any unfair or unconscionable means to collect or attempt to collect any debt. The key term in the provision is debt. The Act defines debt as any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes. So there are basically three requirements. There needs to be an obligation or alleged obligation. It needs to arise from a transaction, and it needs to be an obligation of a consumer. All of those requirements are satisfied here. So obligation of a consumer is one. Admittedly, there's support for that in consumer purposes. But that's an overlay to be given. Our cases seem to wrestle with what perspective we're taking. Is the standard that it is mandatory, that it's provided by statute, versus something central or voluntary? Is the standard that it's a relationship between the individual and the entity, so that if you're dealing with a government authority rather than a commercial type of transaction, that that's the dividing line? Do we look at it from the perspective of the individual who's availing themselves of the services, or do we look at it from the perspective of the authority using the funds for a given purpose? As we understand it, there are two key elements within Your Honor's questions. Where does the obligation come from? And then wherever it comes from, is it an obligation of a consumer? And the primary dispute is where does the obligation come from here? Now, the court, primarily in the police case, rather than wrestle, I think it looked at both sides of the line, but the line was clear. Does the obligation come from a transaction? Why is that line so clear? Because you have a tax, and I guess we can understand that, and that's by operation of law and passes with property ownership, and you don't volitionally go out and contract to get a tax. But then you have water and sewer, also grounded in law, and you buy a property, you're pretty much going to get water and sewer, and it's by a municipal enactment. The distinction is blurry, isn't it, in the police case? Not at all, because the same panel of the court looked at both of those things and said yes to the utility, no to the tax. And the reason, the difference is the utility is there's an exchange. The consumer, the plaintiff, gets the state money. The state gives the consumer the service, the utility service. By contrast, the property tax is just a tax. It's just there. The state doesn't give anything to the taxpayer. It simply commands the payment, and that's the difference. And so why isn't it the right analogy here, the service of access to the holder, the bridge, that the consumer is voluntarily availing themselves of? Well, that is the right analogy. That's why the toll here, the highway toll here, even if you remove the written contract, which we submit you can't remove, but even if you remove the written contract and simply had a toll for use of the highway service, that would be more like the utility in the police case precisely because it's an exchange. The state provides the opportunity to use the road, and the consumer pays for it. And so there is the state gives something, the state gets something, unlike property tax where property tax is paid for local schools, whether the owner's kids are in school or not. I'm sorry. Isn't there a distinction to be drawn on the toll here because E-ZPass is different, right? If you drive 10 miles, the toll authority says, you know, that's a dollar. E-ZPass is a contract that's entered into that says it's 85 cents. But the thing that I am struggling with is what do we look to and how do we think about primarily for personal, family, and household purpose? That's a requirement that I'm not seeing being satisfied here. Okay. If I could answer both parts. Your Honor described the existence of the E-ZPass agreement as at least a distinction from toll payment. We think it's a difference. Although we believe that the toll payment by itself is like the utility. It's an exchange. It's something for something. And so the toll payment by itself would be covered by the Act. The E-ZPass agreement makes it much clearer because the E-ZPass agreement calls itself an agreement. It effectuates an agreement. It lays out what violations are, and it establishes charges for the violations that are exactly what are in defendant's collection letter. And so that's why the defendant's collection letter is clearly collecting charges pursuant to an agreement that that satisfies the Act's requirements as to is this an obligation arising from an agreement. Your Honor, the second question is, ah, but is it a consumer obligation? The answer there is yes. If we have an obligation arising from an agreement, we now look at the consumer and why the consumer entered into the agreement, and the consumer pleads that he used the roads for personal purposes. And so that's what satisfies the personal, family, or household purposes. The defendant's alternative position is, no, we don't look at the plaintiff. We look at the ultimate charging authority. But there's no case that supports that. So does that mean that if I had a vehicle that I used for both personal and, well, let's say I used a vehicle just for commercial purposes, I would lose this claim because it wouldn't fall within primarily for personal, family, or household? Right. And the statute recognizes that, you know, maybe, you know, all commercial, all personal are the easy cases and what happens when there's a mix. But the Act says primarily. And so the question becomes, is it used primarily for personal, family, or household purposes? You know, the plaintiff pleads as to himself that it is, and the punitive class definition limits itself to natural persons rather than some form of corporate person, which where the Act's application may shake out differently. The basis of the toll is granted in law, correct? It's set by an authority, I presume. Some entity regulates the tolls. Is that fair? The toll by itself is a charge that comes from law. It comes from the New Jersey Administrative Court. And if you didn't have E-ZPass, just hypothetically, for a second, would you still claim that an indebtedness that arose because of somebody running the toll gate, and an attempt to collect that absent E-ZPass, that that's a violation of the Act? You wouldn't claim that, would you? Yes, we would. Why? Because what's happening there is the consumer is accepting the government service but not paying the charge. And so it still arises within the context of an exchange between the plaintiff and the state. Is it a problem for you that this could constitute a theft of something, of money that an authority or a state was entitled to? You're trying to build a class action on the fact that somebody didn't pay a legal obligation. Is that a problem? No. First off, the Act treats obligations and alleged obligations identically. So whether Mr. St. Pierre paid or not is immaterial to the claim. Second, whether it's a theft or not, the fact that this is a contractual relationship, what they're alleging in their collection letter is a breach of contract. There are four places in the collection letter where it's clear that the obligation, and that's what the FDC looks, the PA looks for, is the obligation that the obligation defendant is trying to collect comes from the contract. But are we to be blind to the fact that the underlying obligation, again, is granted in law? I get the argument that there's an E-ZPass contract and the collection is on the contract. You say it takes it out. But are we to be blind? Are we to sever from our analysis the fact that the obligation to pay the toll is set by law? You say it's a transaction nonetheless. It's a transaction nonetheless, but this alleged obligation comes from the contract. It does not come from law. It's just a matter of payment. I'm sorry, an issue before we address in public. It's more than the matter of payment. I mean, to shorthand it, it's the who, the when, and the what of the collection letter all point only to the E-ZPass agreement and not the New Jersey regulation. The who that's collecting is New Jersey E-ZPass, party to the agreement, not a party to the regulation. The time of collection, the New Jersey regulation defendant cites provided for 60 days after the violation. Here, the list of violations occurred on July 8th and 10th, 2013. The date of the collection letter is June 2014. It's 11 months later. The regulation that they say creates the debt doesn't allow for collection. The contract doesn't have that kind of time limit. Then, finally, the amount, the total amount plus $50. The regulation says the $50 is waived if there's an unintentional violation. The agreement doesn't say that, and the collection letter doesn't say that. So the collection letter, the parties, the timing of it, and the subject of it all are creatures of the agreement, and that's why the act applies. In terms of the amount that's due, the contract seems to provide that $50 per charge. It's not really coextensive with New Jersey law. If your fund has insufficient balance to pay the toll due, you must pay with cash and cash only. Otherwise, there's a toll and administrative fee. If it's not paid under state law, how are you finding some $50 fee that is outside of what is authorized by New Jersey law? The New Jersey law says that the $50 fee is waived on proof of an unintentional violation. The agreement doesn't, and the collection letter doesn't. The collection letter just lists amounts. Several of the amounts have $50. There's no reference to an opportunity to waive. The terms of the collection letter line up with the agreement. They don't line up with the regulation for each of those reasons, that the amount is unconditional and that it's way out of time from the regulation, whereas the New Jersey statute for breach of contract is six years, so it would be timely as a contract collection but not as a regulatory enforcement. I see them over my time. Are we bound by Safeway trails in its view that tolls are more akin to taxes? The tolls are not akin to taxes in the sense that there is an exchange, that at least as to what's different about the property taxes that this court looked at in Stout and Pulleys is that there it was simply a command of the state. You will pay tax, period. You don't get anything. You simply pay the tax, whereas on a highway toll, removing the contract, which we have made clear can't be removed, but even apart from the contract, it's an exchange. It's the use of the road for the payment of the toll, and that's akin to the utility relationship where the plaintiff gets something and the plaintiff gives something. That's what makes it an exchange. But my question is, are we bound by Safeway trails? It's looking at state law. It ruled that looking at tolls, tolls are more akin to taxes. I don't know that that makes them akin to taxes for this purpose, that whether it's looking at does this constitute an exchange or not. It may be that it's a command of the state, and it may be that absent the agreement there are mandatory penalties that apply. But the question here is, did the plaintiff get anything for the payment? And the answer is yes, and that's what makes it an exchange under the FDCPA. I'm way over my time. Thank you. Good morning, Your Honors. May it please the Court, Joel Bertocchi from Hinchon Culbertson in Chicago, on behalf of the appellee. I want to start where Judge Greenaway ended. I think you are bound by Safeway trails. But if you're not actually bound by it, I think it's a pretty conclusive and persuasive statement as to what New Jersey means when it enacts tolls. New Jersey believes, and the New Jersey court has said so, that they are taxes. And that's, in fact, what they are. In the police case, it's clear that the source of the obligation is what dictates whether something is a debt or not. In this case, the source of the obligation is New Jersey state law. The purposes of collecting tolls are set out in New Jersey statutes, gentlemen. But that's where I wonder about the police case, because the source of the obligations that that case found collection of would be violative of the act were water and sewage, right? And so what are they grounded in? Water and sewer are grounded in what the court referred to as a pro-tonto exchange of water and sewer services where the consumer pays. It's a lovely phrase. Well, you guys used it. Yeah. Don't blame me. Well, point taken, point taken. So water and sewer are enacted by something that a municipality does, similar to when taxes are set, right? Water and sewer are things that are consumed. You consume, you get a gallon of water out of your faucet, you consume it. You consume the services of flushing it and treating it. Tolls are not like that. The penalties that were at issue there were under city ordinance. Those were staffed for it. They're not just a toll. Well, I'm not sure that the court really went that far as to talk about penalties. But the underlying obligation was the purchase by a homeowner of a service or a good. So you use the turnpike in New Jersey. It's a volitional act. You make a determination. You don't have to drive on the turnpike, right? Right. You don't have to own property and pay property taxes. Well, but if you own property, you're going to have to pay property taxes. Yes. So there's no wiggle room. There's no discretion. You agree you can drive a car in New Jersey and never touch a toll road and never owe a toll. I come from New York, so I could make a turnpike jump. I understand your point. Is that true? Yes, it is. You can owe a toll road. How do you address your opponent's contention that the E-ZPass agreement actually expands upon whatever New Jersey law says and that it appears to bring in overdue or tolls that are due that are outside the 60-day statutory window? In other words, it enhances, the way I see it, it appears, the ability to collect outside that 60-day window. Why isn't that a transaction that fits within the ambit of the act? I address it in a couple of different ways. First, Your Honor, you look to the root source of the obligation, which is tolls. Second, and you look to the purposes of those, of collecting tolls, which is declared in New Jersey statutes. In the police case, the court explained that the mechanism that is invoked by the municipality or the taxing authority to collect the debt does not determine it. It's the initial source of the obligation. Second, I would also point out that the E-ZPass obligation is also covered by a New Jersey statute. And I've got it here. It's, I won't get to it, sorry. Well, there's a statute that enables E-ZPass. No, there's a statute that says you have to, it's a violation of the New Jersey statute not to pay your E-ZPass charges. It's 27-23-34.3 that says, so even payment to E-ZPass, although there is a contract, is pursuant to state law. Now, I'm not sure, honestly, that there's any payment that you make under that contract that isn't covered by New Jersey state law except the $1 transponder fee. And that is not a subject of the collection letter. The third way, I think what the court and what my opponent's argument is getting at a little bit, and what the court's questions are getting at is that tolls are a per-use charge. Let me go back. So Judge Wilson drops a footnote and says if there's a dollar membership fee, that might put the case in a completely different light. But that's not covered by what they were trying to collect. I'm not sure. I think you'd be sort of, the tail would be wagging the dog at that point. You don't like that footnote. I like the fact that she said it's not in the case. That part of the footnote is terrific. What about the $1 charge? I'm not sure, Your Honor. But that, again, is not, that, again, is derivative of the obligation to pay the toll and to pay the charges. And the charges, as I just said, are covered by statute. Well, I take your regrets. There's argument to me that under the statute, it would not be an administrative fee if they, if the toll machine was reading correctly. That's not exactly the case. But with E-ZPass, even an inadvertent violation, that would be a $1 charge, and that would not be an inadvertent violation to the E-ZPass charge. Would that indicate that there is a difference in the amount that's charged over and above the underlying toll? You know, I don't know the answer to that. I'm sorry, Your Honor. But even if there is, it is still derivative of the obligation that is required to pay those charges. We're talking about whether it's a debt, not whether it was a mistake or whether it was not charged properly. What should we look to to define this notion of primarily for personal, family, or household? Primarily for personal, family, or household. You're talking about the perspective question? Yes. Well, the statute doesn't make it clear. I think my opponent would have it that the person who is supposedly the consumer, and we don't think there is one here, but I'll get to that, that it is that specifically. But the language of 1692A5 doesn't indicate that. It allows for consideration of everybody's purposes. And in a taxing situation, we think the governing purpose here is the purpose of the New Jersey statute, the purpose expressed in the New Jersey statutes of collecting tolls in a statute, of allowing for an electronic toll collection system like E-ZPass in a statute, of requiring that those charges be paid in a statute. And we think in this instance, those are clearly intended to indicate that this is a tax and not a consumer charge. But a toll is a user fee, right? Right. I'm glad you came back to that because that was the third part of my answer. I want to give you an illustration. Parking. In the Franklin case, because toll is a per-use charge, there's no question, but that is really just the way they have decided to assess the tax, so it falls a little bit more on turnpike users. But users pay a proportionate tax, as I understand the basis of the toll road, to maintain the road, to build the road, as it were. It doesn't go into the general fund. And, again, if you want to go back to the Seminole case, you look at the Pulleys case, you pay your water bill, you pay your sewer bill because you're using a particular service. You're availing yourself of a filtration plant, a sanitary sewer system, what have you. Why isn't that the same? Because when you pay a toll, you are not consuming the road. That toll does not reflect that you're wear and tear on the road for the next 50 miles until the next toll booth. It does not reflect that you are leasing the lane that you're going to be driving in. Of course not. Of course not. That would be absurd. Right. But it does go to the maintenance and the construction of the road, does it not? It goes generally to that, and it can also, in fact, under the statute, be used to a limited degree for other purposes, other transportation purposes. But let me give you my parking example. Because the fact that it is a per-use charge can't be determinative, and here's why. In the Franklin case, the Seventh Circuit dealt with a parking lot that was owned by a municipality, but it was run by a private parking company. And they had a sign when you drive in that says if you park here, you're going to pay this much for an hour and this much for two hours and so on. And if you don't pay, there will be this charge. And so these so-called park and dashers would park and dash, and the parking company would hire a debt collector. And the Seventh Circuit held that those charges were debts covered by the Fair Debt Collection Practices Act for two reasons. One is because there was a contractual relationship, nothing signed, but a consensual, perhaps Judge Kraus used that word, maybe it's a better one, a consensual relationship formed when you park there with the charges right in front of you, and you implicitly agreed to pay those charges and to pay the violation charges. So there's a list of tolls on a New Jersey turnpike, and that example is a little lost on me because you say that there's a statute that makes the violation of the E-ZPass payment against the law. But there's nothing in the record that I see that New Jersey is enforcing that. Rather, they're sending it to a debt collection company just like in the Seventh Circuit parking case. Right, and under the police case, that is secondary to the purpose of the debt. But let me give you the rest of my example about parking because there's a second part to it. Wasn't it dispositive in Franklin that there was no municipal ordinance or regulation? Yes, exactly. That was my second point. The first point was that there was? There was only contractual. Right. There was no law in place. Exactly, right. Right. Right, and this is why the fact that it's per use can't be determined because let's say instead of parking in that parking lot, you parked on the street in front of the parking lot at a meter spot. No court would hold that what you were supposed to put in the meter was a debt or that if you got a parking ticket for not putting money in the meter that that would be a debt. Same act, same per use charge. You're parking 20 feet away, and it's different. And the reason for that would be that the source of the obligation to put money in the meter and the source of the obligation to pay the parking ticket if you don't is a statute or municipal ordinance. So it can't just be per use. You still have to look at the original source of the obligation, and in this case that source is New Jersey statutes and New Jersey administrative codes. If there are no further questions, I'll rest. Well, I think the subject of the transaction. Oh, I'm sorry. Okay. I think the former, Your Honor, because the legal entity, in this case the state of New Jersey, that created the obligation did so for a purpose. The statute doesn't indicate that it is the purpose of the consumer. The water utility offers water for personal, family, or household purposes. It offers sewer treatment, I guess, for the same thing. The state of New Jersey offers the turnpike for general purposes and charges the toll for purposes of keeping that operating. So we think it's that perspective. It's the perspective of the party that creates the obligation. What role should STAUB play in our reasoning? We've talked a lot about policy. Yes. Well, STAUB, I think, is the original case that rejects the idea that, you know, simply because you use a government service that you're creating a contractual relationship. And so I think STAUB is what, to some degree, police sits on in that respect. Is it significant that in STAUB we focused on the idea of the consumer, that the FECPA debt definition depended on there being a traditional non-workable relationship as opposed to a relationship between a citizen and a government taxpayer in the past? Well, I think the way I look at the two of them, I think STAUB sort of suggested that, but police and then the Piper case that came after it have indicated that the identity of the entity creating the obligation is not by itself enough. They rejected the argument that you can't have a contract with a municipality, and I think that's right. But you still look to the source of the debt. You still look to the reason it was imposed. Thank you, Robert. Three points from the defendant's argument. First, the reference to police and the mechanism versus the source of the debt. Police, in looking at the tax, looked at there was, after the tax obligation arose, there was a payment plan, and the court said that the post-obligation plan, the post-obligation contract, doesn't change the nature of the original obligation. So it was looking at a situation where you had obligation and then contract. Here we have the reverse. The E-ZPass agreement predates any of the alleged obligations, and for the reasons we've already argued, it's the source of the obligations. And so we're not using the agreement to transform the nature of the obligation. The relationship between the party on whose behalf collection is being undertaken and the plaintiff was created by the contract. I'm not sure I understand that, because the agreement talks about the tolls that are due, or those that are defined by statute. How does the contract create some independent toll? It creates the amounts that are in the collection letter, which includes but isn't limited to the tolls. It's also the non-waivable $50 fees, which only come from contract, because the regulation qualifies them. And that's why what the collection letter is collecting only lines up with the contract. That's why, unlike in the payment plan, here the contract is the source of the obligation. Prior to the contract, it was not. I'm not sure that you're not reading something in the policy that isn't there. You say it's the date of the agreement, and the E-ZPass predates the obligation, and therefore it's game, set, match, if I understand what you're saying. But Paulus simply says it seems to me contract or not, it doesn't matter. So it could be a collection contract after the fact, or it could be an overlaying contract before the fact. It's the source. That's the way I read Paulus. You say the date is significant. I'm not seeing that. Well, I view the date as determinative of the source. But that's not exactly what Paulus says, is it? The date of the agreement is controlling. You're making that distinction. Paulus doesn't. The source of the obligation is controlling. In Paulus, it was tax law. Here it's the E-ZPass agreement. Now, as to the – Your adversary says not. The source of the obligation is New Jersey law. We've lined up all of the ways in which the party collecting, the time of collection, and the nature of the amount line up with the agreement and don't line up with the only law that they offer as an alternative. As to the point about the consumer perspective, in some ways, I think this ultimately lines up with the other arguments. But the best answer as to do we look at the consumer's purpose, the plaintiff's purpose, or the creditor's purpose, I think the only way that the Act's definition in the case law applying it makes sense is to look at the plaintiff, the alleged consumer's purpose. The Act refers to a transaction primarily for personal, family, or household purposes. So let's remove the E-ZPass, remove the Turnpike Authority, and put in a credit card company or a debt buyer. The case like the court's Rosenau case or even the court's Paulus case didn't look at what the sewer authority was going to do with the money it was collecting. It looked at why the plaintiff entered into the transaction to get that thing and why the plaintiff agreed to give money to get that thing. And that's why the Act applied because the plaintiff, the alleged consumer's purpose, was the driving factor. For the defendant's argument on purpose to prevail, that would mean that in a credit card case, we would be looking at what the creditor is doing with the money rather than why the consumer is using the card. And that doesn't line up with the court's case law. It wasn't the right question to ask what it is that the consumer is getting for the debt, for the funds that are being paid. And there, a distinction seems clear between utilities where what you're getting in terms of services coming directly into your house, literally into your house, are for personal and health care purposes. But what you're getting when you pay the tax for a toll are general purposes, the servicing, the maintenance of roads, the construction of roads. You're not getting something that is personal in the sense of a designated lane, or even something that's personal and customized to a given car's usage, whether it's a small car or a large car, for example. I think the answer to that question is that it's incorrect to look at what the plaintiff consumer is getting, because the question is, is the plaintiff consumer getting something for the money in that transaction? And that's what makes the toll payment like the utility payment. The utility payment gets the plaintiff the utility. The toll payment gets the plaintiff the use of the road. The property tax payment doesn't get the plaintiff use of the property. Property is separate and apart from the government's obligations or requirements. So it's the fact that the consumer is getting something that makes it an exchange. This money that's the subject of the transaction is given in exchange for something, and that's what makes this like the utilities rather than the tax. The tax example that you gave doesn't seem to make sense, because what you're given is use of the house, right? I mean, if you don't pay your property taxes, you won't be able to stay in the house, so there is an exchange. I don't know why it's not akin to what we have here. The money, the question started with where does the property tax money go? What is it used for? And it's not used for the ‑‑ it's not designated for the person paying it. The people pay property taxes whether their kids go to the schools or not, and that makes property taxes in police different from paying tolls here. You only pay tolls. As I believe Judge Cross said, it's a user fee. You pay it for using, and that makes it like the utility and an exchange. I don't understand your point. Property taxes look for the benefit of whatever your locality, your municipality, your county, your state. I don't understand why you wouldn't benefit from that. It's not an individual benefit, and there's not even a defined benefit. That's what makes it not an exchange. The act in this court's cases are looking for an exchange. The money is given, and something comes back to the person who gave it. And in the property tax, there is no ‑‑ there's not a ‑‑ there's not any benefit to the consumer for ‑‑ defined benefit for the consumer. And if, you know, in a situation where the property taxes go entirely to schools, the benefit would be something amorphous like the benefit of an educated populace as opposed to the personal benefit of anybody paying, getting an education. And that's what makes it different. The benefit is a general public one. And when we're talking about tolls, the benefit is a general public benefit of the provision, the maintenance, the repair of the roads. It's not specific to any given consumer. That's a general public benefit. The benefit that Mr. St. Pierre gets from paying the tolls is not ‑‑ is the use of the road, the ability to keep going and get to his destination. That's the personalized benefit from the payment that lines up with the utility payment. That's why there ‑‑ Does that line up with Stout, though, and line up more clearly with Stout than Paulus? No, because in Paulus, the payment of the utility bill went to the amount of the utility, the amount of the water, the sewer service gotten. Here the payment of the toll is for the portion of the road used. It's not a general obligation. People who aren't using aren't paying that charge. That's what makes it an exchange. There's a specific correlation there that looks very much like any consumer transaction. The amount of water that you actually use corresponds with the charges. Where you're talking about a toll on the road is a flat rate. Everyone's paying that. And the access to the road, that's the occasion for the payment to be made. But when you look at what the actual subject of the transaction is, is the subject of the transaction the access, or is the subject of the transaction the maintenance and provision of the road's value? What the Act, what 1692A5 asks us to look at is the purpose of the transaction. And Mr. St. Pierre's purpose was not to make the roads good for everybody. It was to get to his destination. That's what makes this fall under 1692A5. That's different from the property tax that the court addressed in Polis and Salve. I'm also going to go back to the $50. Because the amount of collection is $50. And I can't talk about that. But the amount of the toll that the student is another. And I think you're arguing that the $50 administrative fees is something provided by contract. And not only by statute. In fact, the contract is the statute. So do I understand correctly, your position is that if an E-ZPass user goes through the toll, E-ZPass inadvertently doesn't register their license even though they are an E-ZPass holder. That when that violation comes with the $50 administrative fee on it, the consumer in responding and identifying their E-ZPass account in good standing, nonetheless is required to pay the $50 administrative fee? There's nothing in the agreement saying otherwise. There's nothing in the collection letter. From everything that's in the record, yes. Because the agreement doesn't provide for the exception that the regulation does. I'm talking about tolls too. And I'm trying to understand if that's the position you're taking, on what authority or anything in a record or anything that you notice of, that that is in fact how it works. It may not be, that may not support the common experience. Well, the language of paragraph 6A, this is what sets out the contractual charges. And in the occurrence of use with a negative balance, the contract says you may incur an administrative fee of up to $50 per occurrence, be charged the full undiscounted toll and may be asked to surrender your tags. So there's the toll and then the $50 charge is separate from that. And as they collected it, as they sent the collection letter, the June 2014 collection letter, there is no indication of any ability to dispute the $50 charge. Now, again, the absence of that is consistent with the agreement, where it's also absent. It's not consistent with the regulation that defendant says is the source of the obligation, because that qualifier is in the regulation. That's, whether this is a, you know, it does appear to make things worse for consumers in two ways. It extends the time for collection and it charges more. But that's, at the very least, the question before the court is, what is the source of the obligation that they're trying to collect on? And what's in the collection letter on page 70 of the appendix matches up with the agreement on page 66, but not with the regulation that defendant has cited. Thank you. Thank you. All right, thank you, counsel. For your arguments, we'll take the matter under advisement.